Neilson, Ch. J.
The plaintiff’s letter and the defendant’s reply constitute the contract. The terms proposed and the money sent by her having been duly accepted, it only remained for the defendant to carry out the arrangement in good faith, and with reasonable *297 care and skill. It would seem that the plaintiff understood and appreciated the peculiarly safe method of dealing in stocks, which the defendant had commended in prior publications ; the straddle contract, combining the advantages of a put and also of a call. By that method the customer’s profit was supposed to be secure if the stocks fluctuated either way in the market. The only doubt was whether the particular stocks chosen would rise or fall, no matter which, during the term. That the stocks known to be active in the market would fluctuate more or less during the sixty days was pretty certain, but much depended on the selection to be made. In an instance like this, where the defendant guaranteed that fluctuation, it was proper that he should have, as he claimed to have, the choice of the stock. Some prior publications put in evidence, and the contract in this case, proved that the defendant made that guaranty only on that condition. In his letter of acceptance and in reply to plaintiff’s proposal, the defendant mentioned two kinds of stock favorably, and gave the plaintiff the choice, but in her answer she leaves the situation or selection to him. He acted on that, and in the form of a straddle contract purchased one hundred shares of Lake Shore at 62% for sixty days, and sent her the usual notice.
The care and skill due from the defendant was discussed at the trial.
That care and skill could be taxed only at the opening and at the close of this business. It is easy to see just where the skill would be useful. In view of his guarantee, the right to select the stock, properly • reserved by him, was conceded to him, as it required some knowledge of the history and condition of stocks; of the causes, often slight, by which they might be moved, and of the devious ways, plans and purposes, the contentions and combinations of those who controlled the stock market. So, too, *298 some professional knowledge might be exercised in the final disposition of tile contract. But beyond that, and from the beginning to the end, the duty which rested on the defendant was very simple, only that which is recognized by every faithful agent or trustee.
But it was claimed on the trial that directly after the making of the straddle contract, the defendant had another transaction with the plaintiff; that he sold on her account one hundred shares of stock short. It was not claimed that the plaintiff had given any order for that sale, or that any express authority for it could be found in the original contract. But it was claimed that the plaintiff had ratified the sale by her acquiescence. With that view an attempt was made to show that, directly after the sale of the one hundred shares short, the defendant had sent her a written notice of it by mail, and had received from her a reply. Her alleged reply was not in court, the letter having been lost. The plaintiff denied having received such notice of the sale, and also denied ever having sent an answer tó any such notice. Witnesses who were experts were then called to show that in the course of business brokers do and may make such short sales on the security of an existing straddle contract. They stated, in substance, that to do so would be operating, for the customer according to usage and custom. Other witnesses think that would be bad management. We are of opinion that the defendant, standing in the relations he did to the plaintiff, could not, without her knowledge or consent, under any usage or custom not known to her, or with respect to which she had not contracted, make the short sale on her account, and thus depart from and work out a modification of the arrangement. In this connection it may be said that, if consistent with the written contract, the usage or custom is useless; if not thus consistent, it is illegal and dangerous. It may be observed, also, that in the *299 instances referred to by witnesses, where brokers made short sales, operating against a straddle contract as if under the usage or custom suggested, those brokers may have been acting in pursuance of the express directions of their customers, or been possessed of instructions to act as they might think best; and that it does not appear that in those instances the brokers had guaranteed the fluctuation in the market prices, by which the accruing profit was to be determined. We think, therefore, that the learned presiding judge was quite correct in his instructions to the jury touching that usage or custom, a thing, if in the trade well known and respected, yet too novel and local to have general significance ; and that he was also correct in the disposition he made of the questions raised upon the correspondence had when the sixty days’ term expired.
The defendant’s letter, stating that he was short of the stock, and held Lake Shore at 62M as against her contract, and had obtained an extension, though, perhaps, sufficiently clear if written by one broker to another, was not so clear and explicit as to apprise one of the uninitiated of its whole meaning. It was not equivalent to saying: “Tour straddle contract and your one hundred shares Lake Shore sold short, using that contract as marginal security; I require protection, and though I have obtained an extension, it behooves you to determine what steps you will take or whether you will let both drift down the tide together.’ ’ She testifies that she did not understand his letter in the sense given to it by the learned counsel for the defendant; and her letter in reply, written at the time, tends to prove that she did not. It could not, therefore, be inferred from that correspondence that she knew the stock had been sold short on her account, or that she intended to ratify that sale. It has been justly said, Ratification is an act with knowledge, and must be unequivocal in *300 its character” (7 Hill, 132). We are also of opinion that the instructions given to the jury were sufficiently favorable to the defendant, and that the requests' to charge were answered in the like spirit. None of the exceptions were well taken. The judgment and order appealed from are affirmed with costs.